Next case is Cary A. Jardin v. Datallegro and Stuart Frost, 2011-1474. MR. HERMAN Good morning, Mr. Herman. A little later than you are. MR. HERMAN Good morning. May it please the Court. I'm John Herman here on behalf of the appellant, Cary Jardin. The District Court erred here by elevating an examiner's statement over the plain claim language itself, over the specification and over evidence of how one ordinary skilled... MS. JARDIN Do you agree that the examiner in his notice of allowance expressly said that these claims are directed to inter-nodal comparison? MR. HERMAN I-N-T-E-R? MS. JARDIN I-N-T-E-R, yes. MR. HERMAN I believe what the examiner said is the comparison has to happen on the same node, but the data can initially come from a different node for the comparison to be made. So there's a disconnect between what the term cross-nodal means. MS. JARDIN I don't think that's what the examiner said. Let's turn to it. 1273 and 1274. MR. HERMAN If I may, Your Honor, the citation that I was referring to happens before that on page 1117. MS. JARDIN It doesn't help that I'm looking at Englewood's appendix, does it? MR. HERMAN And if I may, Your Honor, I can read you the exact quote where I believe it is. MS. JARDIN No, tell me what page? MR. HERMAN 1117 of the joint appendix. MR. BOUTROUS What lines? MR. HERMAN Starting at line 20. The claim limitation of the first portion of the second database table is stored in the first node while the first joint table is in the same first node when said first portion of said second database table is compared with said first joint table. That, Your Honor, says exactly what I think our position is, which is the data has to be on the node to be compared. MR. HERMAN Yeah, but the statement, the key statement is on line 28. It says, in other words, comparing a joint table in a node with a portion of a database table in another node was not well known in the art. MR. BOUTROUS Correct, and this goes to the time and place restrictions submitted by the court. So the point is the examiner said, I'm allowing this because this requires cross-nodal comparison, which wasn't part of the prior art. MR. HERMAN Cross-nodal in the sense that the data starts at one node is then transferred to a different node for the comparison to take place. This is cited repeatedly in the specification. The district court found that nowhere in the specification was a disclosure of a, quote, cross-nodal comparison where the data is resident on different nodes at the time the comparison is made. That's a physical impossibility. MR. BOUTROUS Yeah, but apparently he views transmitting as meaning it leaves the one node and goes to the other node, and then there has to be a cross-nodal comparison. Isn't that correct? MR. HERMAN I don't know what you mean by cross-nodal. If the comparison has to take place on a computer, which is the node, the comparison can't take place outside of the node. MR. BOUTROUS The different nodes, which are essentially different computers, right? MR. HERMAN Correct. MR. BOUTROUS Right, so what he's saying is, while some of this stuff is in the prior art, that the idea of cross-nodal comparison, that it's comparing a database on one node to another node, was not known. MR. HERMAN Correct, and that was, the patent teaches that you generate a join table and send that join table to the other node for the comparison to take place. The specification has a number of direct disclosures on that very point, and if I may, Your Honor, I can cite you to a number of those where it teaches exactly how. MR. BOUTROUS I'm not understanding how what you're saying is consistent with the examiner's statement at line 28. He says comparing a join table in a node with a portion of a database in another node was not well known. That sounds as though the actual comparison takes place between nodes, and part of the data is on one node and part of the data is on another node. MR. HERMAN This is one, we believe, one of the fundamental errors. One of ordinary skill in the art, and we submitted evidence in the form of a declaration from Dr. Greenspan, would understand that the comparison has to take place on a computer. Perhaps, but I'm dealing with what the examiner said. The examiner may have been wrong. He may have misunderstood, but he said this, and the patentee was silent in the light of that and allowed the re-exam certificate to issue. And the problem that you have is that under the current MPEP rules, which were changed in 2000, that silence has significance. If I may, Your Honor. First, I think it's at best ambiguous what the examiner is saying. The examiner says the comparison, and this starts on line 20 here of page 1117, the comparison takes place on the node. The patent disclosure repeatedly in the specification says that the comparison takes place on a particular node, and I can cite you column 13, lines 51 through 54, column 16, lines 23 through 33. What's different about Beru in this invention, other than cross-node comparison? Beru, and the record's not been developed on this from below, Your Honor, but Beru doesn't use joint tables. Beru is a very sophisticated, high-end IBM-type program. What Mr. Jardine invented was a way to do this on off-the-shelf commodity equipment for efficiency purposes, and he did it through distributing joint tables, and that was not taught in the prior art at the examiner. Why, if Beru was distinguishable, why did the patentee remain silent during the entire reexamination proceeding and not say anything at all? As Your Honor knows, the patentee isn't required to say anything. For this to arise to a clear and unmistakable disavowal... No, no, that's not true. The patentee, under the MPEP amendment in 2000, is required to say something. This is different from the earlier MPEP provision. It was changed specifically to deal with this problem of people lying in the weeds, letting the examiner say something which wasn't true, and then saying later on, oh, well, that doesn't limit our claim. We would disagree with Your Honor to say that the examiner makes a clear statement... Are you familiar with the 2000 amendment? I'm not, Your Honor. But I disagree. Are you in your brief that silence doesn't have any significance and you're not familiar with what the MPEP says about it? We were relying on this Court's opinion in the Salazar case primarily. Salazar was relying on the earlier version of the MPEP which said the exact opposite. It said silence is not significant. Let me tell you what the Federal Register says about the change to the MPEP because it seems a little hard for you to respond when you obviously didn't know about it. So it used to be 1.104e, which is your relevant provision, used to have the following sentence. Failure to file such a statement, and the statement is by the applicant responding to examiner's notice of allowance in 101.4e. Failure to file such a statement does not give rise to any implication that the applicant or patent owner agrees with or acquiesces in the reasons of the examiner. That's the sentence it used to be in. And this whole Federal Register is all about notice and comment and discussing why they're eliminating this sentence because they say post-Warner Jenkinson, post-Festo, post-Markman, the Supreme Court's made it clear that prosecution history and notice is so important. And so what they actually say, in view of recent case law, the failure of an applicant to comment on damaging reasons of allowance gives rise to a presumption of acquiescence in those reasons and the negative inferences that flow therefrom. That's what the Federal Register said. So unfortunately, the Federal Register, obviously unbeknownst to you, the PTO sort of thought this through, had notice and comment, and has rejected the idea that silence in the face of statements by the examiner for reasons of allowance means nothing. They say quite the contrary. It gives a presumption and the negative inferences should attach. So this is what you're unfortunately confronted with and will argue for the first time, but how would you respond to it? Again, taking a step back, we don't think the examiner said that this comparison can occur in the netherworld. You don't think the examiner was viewing this as a cross-nodal invention. Exactly right. And I believe he says it right here on line 20. We think it's a physical error. Where does he say on line 20? Line 20 is just a quote of the claim limitation. Am I wrong? Am I looking at the wrong line 20? He says that it's not well known in the art. He said that the comparison of the first portion of the second day's beta data table stored in the first node, while the first joint table is in the same first node, when said first portion is compared with said first joint table, cannot be well known in the art. That's exactly correct, and the specification repeatedly supports that exact comment. And so the reasons for allowance, we would disagree strenuously that the examiner found that... But here's the problem with what you're saying. He basically quotes the two... He has two long quotes from the claim, right? And he says this can't be... The first long quote is exactly what you're saying, comparing first node with presumably second node. And he says it can't be well known in the art because, while the fact that, and then quote, a joint table, another very long quote, might be well known in the art because the scope of the claim invention, and then he goes on to say, and he describes it, and he says, in other words, which clearly means he's trying to now simplify and explain what he takes away from the claim language. In other words, comparing a joint table in a node with a portion of the database in another node was not well known. Correct. So I don't know how else to interpret that, except that he's explaining succinctly what he believes those long quotes mean. I think what's going on here is the joint table is created in one node and transmitted, as required by the claims, to another node for the comparison to take place. We think this is entirely consistent with the claim language. The specification is consistent. This is what the invention is. The district court found, and we don't disagree, there is no disclosure of cross-nodal in this patent anywhere where the comparison takes place not on any nodes. That can't happen. That's exactly the problem, that the examiner may have misunderstood this, but he said that it requires cross-nodal comparison, and the patentee remained silent. Having distinguished Beru in these earlier references on this ground, which you say is spurious, which maybe it is, the patentee said nothing. I disagree. The patentee said, well, no, no, you misunderstand, Mr. Examiner. This is not what is involved here. You're misreading the claims, and what the claims really are talking about is making comparisons on the same node, not cross-nodal comparison. Maybe there would have been a different result as a result of the re-exam, and the examiner would have found this obvious over Beru. We disagree that the examiner in these remarks says cross-nodal comparison. He does not say that. He doesn't say that the comparison has to be done somewhere other than a computer. The comparison has to be done on a computer. He says it has to be done on the computer, but what he's saying is it's cross-computer. It's from one node to another. He says one portion of the database is on another node, and it's comparing across the nodes. That's exactly what's happening. The joint table sends that portion of the database to the node for the comparison. He doesn't say that the comparison is made after the transfer so that the two things are on the same node. He says they're on different nodes when the comparison is made. The claim language says that. The claim language says you generate a joint table and you transfer it. That's what the claim language says. We think the examiner understood that exactly here. And again, we submitted evidence that one of ordinary skill in the art would understand that this had to occur on a node, not somewhere in between nodes. Cross nodal was a term coined by the defendants in this case. Mr. Herman, you're well into your rebuttal time, but we've asked a lot of questions. We'll give you your three minutes rebuttal time, and now we'll hear from Ms. Brooks. Thank you. May it please the Court, to begin where counsel left off, which is, first of all, let's address whether the examiner's statements were or were not clear and unequivocal. And Your Honor did do the appropriate side. It is starting at Joint Appendix 1269. And specifically, the examiner first makes the statement at Joint Appendix 1273. The examiner is talking about Baruch and says the patentee claims that the first portion of the second database table is compared with the first joint table, wherein the first portion of the second database table is stowed in the first node, while the first joint table is in the second node, making it very clear that the examiner found this to distinguish Baruch, that you're comparing cross nodally. Now, physically, how can that happen? It can happen in the cloud. You can have a cross nodal comparison without transferring the data all onto one node. The examiner goes on and says that's the difference, because what Baruch suggests is that the first portion of the second database table is stored in the first node, while the first joint table is in the first node, when the first portion of the second database table is compared with the first. So what counsel just described, Your Honor, where a joint table is transferred to the same node in order to compare it, that's what the examiner says Baruch does. And the examiner distinguished Baruch over this invention, because this invention had the first portion of the database table in one node, while the joint table was in another node. Now, counsel says, well, it's transmitted, in order for there to be the comparison on the one node. But if you look at the steps of the claim, if the transmitting takes place before the comparing, then what you have happening in the first comparing step is going to be a first portion of the second database table in the first node being compared with a first joint table that is now in the second node, because it's been transmitted. And you're going to have a second portion of the database table in the second node being compared with a second joint table in the first node, because it's been transferred. So, once again, you're going to have this cross-nodal comparison. Well, do we have to accept your and the district court's claims instruction that transmitting means moving, as opposed to potentially including broadcasting? Actually, the district court found that it did include broadcasting. And the point isn't whether or not transmitting includes broadcasting. The point is that the claim makes very clear what the comparison is between, and it is between data that is on one node with data or a joint table that is on a separate node. And the examiner not only said that at 1273, the examiner repeated it again at 1274 when distinguishing the invention from OZU, where, again, the examiner said, again, the patentee claims you've got your portion of a second database table on the first node and your joint table on a second node, and OZU does it all on the same node. But isn't all this contingent on the notion that transmitting means moving the data from one place to another? Because if you leave the data on the first node but move it, then you can have an intra-nodal comparison as opposed to an inter-nodal comparison. And it seems to me that the district court harbored the view that transmitting means moving from one place to another and not leaving a copy behind. The district court didn't actually address whether the district court believed a copy was left behind or not. But it moves it. Moving something from one place to another necessarily means it's not still in the same place. If I move you from there to there, you're not in both places. That's correct, although in the computer world, as Your Honor knows, you could both move it and leave a copy behind. Well, that would be copying, not moving.  You wouldn't use the normal nomenclature of moving. But what was not in dispute, interestingly, at the district court, by either party, was that transmitting meant moving. And it isn't as though the appellant ever took the position that what they said was it was moved in order to be compared on the same node. Wait a minute. When you say transmitting doesn't mean moving, I understood their brief to, throughout the entire brief, argue that it is, at least here, maybe not below, but at least here, that it is exclusively an intra-nodal comparison as opposed to a cross-nodal comparison. And the only way it can be an intra-nodal comparison is if the table is left for the comparison to take place. The problem is, Your Honor, that when the tables are created, they are created on different nodes. And so you have to move them then under a plane of theory. No, but you transmit them. You don't have to move them. You transmit a copy of them to take place there. Understood, Your Honor. But then what happens is we get to the second comparing step. So if you do it that way, then the first comparing step is going to be intra-nodal, but then the second comparing step is going to turn into inter-nodal. Because now what you're going to have is... No, actually, I have this really great table that Milo Clark made. You can't really see this, but he's really an expert in systems, and it's wonderful. And it really shows quite clearly that the comparisons are going to take place, so the comparison, which corresponds to E, is between the first joined table on the first node and the first portion of the second table, which is also now on the first node. So that's all in one node. The second comparison is going to go between the first portion of the second table, same thing, and the second joined table, which has been transmitted from the second node to the first node. So all comparisons are taking place intra-nodally, even though there has been a transmission of certain data. Then, if that's the case, Your Honor, that's Baruch, and that's Ozu. And the only way that the Patent Office distinguished the prior art from this invention and re-examined was the fact that there was this intra-nodal... But you agree that the Patentee never made any affirmative assertion that this, at least not before the Patent Office during prosecution. I never see... I certainly see the sentences that you're referring to, statements by the examiner, both on 1273 and 1117. But the Patentee never affirmatively validated any of that, right? That is correct, Your Honor. The Patentee remained silent, and we also agree that under the new NCEE, the Patentee was required to say that the examiner was wrong. Okay, and so... The problem I have is I just can't find anything in the specification that discloses, even, or supports the notion of the intra-nodal comparison, and I'm just sort of flabbergasted at the examiner's statement. Whether the whole thing would have been invalid under Baruch is an issue not before me to decide, but I'm just sort of flummoxed at the idea that the examiner characterized this as intra-nodal because I just can't find support in the specs for that being the way the comparison goes down. I mean, I agree there certainly is no discussion in the specification of that. In fact, the specification is confined almost exclusively... I appreciate your answer. A lot of people would stand there and fight me on something like that, and so I appreciate your honesty and candor. That's very refreshing. And one of the problems is, Your Honor, that really, if you look at the specification, it's actually only talking about single node, and then it kind of shorthands and says, and you can do it the same way with multi-node. So there's really very little disclosure in the specification about a multi-node comparison, period, whether it's all done by copying and then transmitting and doing it on the same node or not. The specification is silent on that. But the patentee wrote the claim in this fashion. The examiner interpreted it in a very logical fashion. The fact that it is not then supported by the specification, which caused the court to find that the means-plus-function claim was, in fact, not supported. That's the patentee's problem. They chose to write it in this fashion. You do agree that Column 24 does actually disclose multi-node quite extensively. It doesn't disclose cross-nodal comparisons like disclosed in E and F of the patent claims, but it certainly does disclose multi-nodal. You suggested a minute ago, I think you went a little too far, you suggested the patent really doesn't even cover or disclose multi-nodal comparisons. It's really all about a single node. And I think you may have gone a little too far there. Well, what it does do, all of the figures are single node and say so. You agree Column 24 is actually disclosing multi-nodal. I do, Your Honor. And actually, I was going to cite to that if I have an opportunity to get to complete versus portion of tables for claims that do. Figure 12, is that multi-nodal as well? Let's see. Figure 12, I believe, is single nodal. But it then describes later how you can do that same. Well, it talks about a primary node and a secondary node. That's correct, Your Honor. So it seems awfully multi-nodal. That's correct, Your Honor. I'm sorry. The single node embodiments are figure 4, figure 5A, figure 5B, figure 5C. And then when you get to figure 12, what it's actually talking about is a multiple set query process as performed in the database system. But when it's actually describing the node embodiments, they're all single node. Figures 4, 5A, through 5C. But with the Court's permission, unless you have any questions on this particular issue, there is another issue on Claim 1 that if Your Honor's reached that, you don't even have to address this comparing issue, which is the Court's down and granted summary judgment of non-infringement on two bases. One was the comparing, that we don't do this inter-nodal comparison. But secondly, that the intermediates results file, that our intermediates results file are generated by different data than the way the patent claims. And if Your Honors look at the Court's claims instruction opinion at Joint Appendix 0002, and specifically at page 10, which is Joint Appendix 0011, and at line 11. After the Court goes through the lengthy comparison discussion, the Court says, in addition, defendant's construction clarifies that each intermediates results file is generated on two separate comparisons. For example, defendants combine the first two comparing terms into one element and tie them to the recited step of generating a first intermediates results file. Plaintiff raises no argument with respect to this aspect of defendant's proposed construction. But that's still all wound up in the same move thing. That, again, requires us to accept the notion that transmit means picking something up and moving it from one place to another. And it can't mean leaving a copy behind for comparison. No, Your Honor, it does not. It's a completely separate issue. If you look above where the Court is discussing this, in addition to the comparing, we also say that there is generating a first intermediates result file based on the above two comparisons, and then generating a second intermediate results file based on the above two comparisons. And the Court is correct. The plaintiff raises no argument with respect to this proposed construction. So what are the two comparisons? If there's no transmitting, everything's left as a copy, what you still have in generating the first intermediates results file. That is generated as a result of comparing data from one node and adding that result to data from a second node. So you're not doing any intranodal now. You're just doing individual comparisons. Data from node one is added. The results are added to data. I don't think the district court ever saying this. Where in the opinion did the district court? I don't necessarily think you're wrong. I don't have an opinion on it, but I don't see that the district court made these findings that you're or can reach these conclusions that you're saying. The district court specifically did, first of all, began in its claim construction, her claim construction opinion, at page 10. She says, in addition. Can you give me a JA study? Yes, Your Honor. JA 0011 is the page, and the actual entire claim construction order begins at JA 0002. OK, 0011. And what is it you'd like me to look at? Starting at line 11, the district court gives yet a second part to our claim construction, which has nothing to do with comparing. There, the district court is talking about what is in the intermediates results file, and that it is generated based on two separate comparisons, the intermediate results file is. And the plaintiffs raised no argument with respect to this aspect of defendant's proposed construction. And plaintiffs didn't. Nary a word. Well, where is this carried over into the infringement? In the court's summary judgment, Your Honor, what the court then goes on to say is. JA 0026. Yes, JA 0026. And specifically at, unfortunately, I didn't write the JA, but it's page 7 of that opinion. 32. Page 7 of that opinion, the header at the bottom, first intermediates results file. Yes, Your Honor. And so if we look at line 26, it says, first intermediate results file and second intermediate results file. And while it's focusing on the comparison argument, the court also then goes on on the next page and then says that there is also a disagreement on not to look. But the court says just what I said before. It's all hung up in the move. Because the accused's technology does not satisfy claim one's locational requirements, that's the moving. Locational is all about is it left behind or is it moved and not left behind. Because it doesn't satisfy this, it does not generate intermediate results files in the same manner. So it's the same issue. Well, but in the court's claim construction, the court did set it out as a separate issue. But they did in the summary judgment. They've linked it inextricably. It's all one issue. I don't see that that's a separate basis for us to affirm. We would respectfully disagree, Your Honor, in that especially since the appellant is silent on this from the very beginning. There's no dispute that even if this is an intranodal comparison, that the intermediate results files are made up of data from a first node and a second node. And there is no dispute that in the case of the data In the accused system. Pardon me, Your Honor? In the accused system. In the accused system, it is made up of one. And that is that the Jew declaration at joint appendix 2327 and specifically at 2329 paragraph 11, Mr. Jew says that any result from a compute node only has results from that compute node. So it never has results from two different nodes. So what you're saying is not that it seems to me that the district court based the decision on this, but that the claim construction was uncontested and it is what it is. And that the undisputed facts are that the accused system doesn't do this. Correct, Your Honor. Would Your Honor like me to move very briefly to the claim 15? The time has expired unless the judges have questions. So we'll go to Mr. Herman for rebuttal. Thank you, Your Honor. Thank you, Your Honor. I'll be brief. The point of this patent is parallel processing. And one of ordinary skill in the art would understand that that's the antithesis of time and place restrictions. The prosecution history, as this court's held repeatedly, is less reliable than the intrinsic specification sites and the claim language itself. But let me turn back to the reasons for allowance. And this is the provision that was not discussed previously. But on 1275 of the examiner's statement, there is a very clear expression of why the examiner is allowing the patentability to be confirmed at lines 10 through 15. And lines 10 through 15, I think, supports exactly the position I articulated previously, which is you've got something stored on node one. You've got something stored on node two. You bring it together for a comparison. But Baruch did that, correct? Not the same way that claim one does it. Claim one has joint tables, which Baruch does not have. So we've gotten ahead of ourselves. We've placed this kind of sausage-making prosecution history file well above the expressed disclosures in the specification, above the plain claim language. Going back to Phillips, we don't think that this interpretation can stand. Would you like any proper prosecution to sausage-making? The prosecution history file. And I don't believe I'm the first to do that. Sure. But I believe Judge Moore got it exactly right. Column 24, lines 15 through 40, and figure 12 support our exact constructions that we're proposing for this court to adopt. And then finally, I'll comment on the intermediate results file. Again, we think that that gets wrapped up in the comparing terms. The intermediate results file. Well, the district court's decision may have. But how about applying the claim construction to the undisputed facts? This goes to our arguments on the summary judgment was improvidently granted. We believe that we had an expert report opine that there was infringement on this. And that was not contradicted by a expert on the defendant side. The district court didn't. Where do we find this aspect of the expert report which addresses this issue about the intermediate results? It's in the expert report attached to the summary judgment. Where? Well, never mind if you can't find it. I don't have the site. And I apologize, Your Honor. But it's in the joint appendix in connection with Dr. Greenspan's report. Do you have a final thought, Mr. Herman? The final thought, Your Honor, would be that the intermediate results file, if you remove the comparing limitations applied by the district court, that on remand we think that that can sort itself out. I have one final question. I feel a little bit bad because we've surprised you with this Federal Register. It wasn't brought up by opposing counsel. And I want to ask you one final question. The Federal Register suggests that it would create a presumption or maybe inferences if an examiner makes a statement characterizing the invention and the patentee doesn't respond. Might you argue that in a case like this where the entire spec goes the other way and where the defendant has even admitted the spec doesn't disclose cross-federal comparison, this would be one of those circumstances where the spec rebuts that presumption? I know this is out of the blue for you. I'm just trying to think it through. I agree with you, Your Honor. And I know that you recently issued a dissenting opinion in the University of Phoenix case on the disavowal of claims code. I think that it needs to be very clear. And the more the specification goes the other way, I think the clearer the disavowal needs to be. And I don't think this is that case. I don't think this is clear at all. Thank you, Mr. Herman. We'll take the case and move on.